DAVIS v. COLUMBIA AND GREENVILLE RAILROAD COMPANY.

1. In the absence of all testimony in support of the material allegations in the complaint, a non-suit is proper; but where, in support of such allegations, there is any testimony, the weight, truth, and sufficiency of which are to be determined, the case must go to the jury. *Cases cited.*

2. In action by the administrator of a son against a railroad company to recover damages for killing the son, there being some evidence,

although of an uncertain character, showing a beneficial interest of the father in his son's life, this question was properly for the determination of the jury.

3. While a brakeman on a freight train was signalling the engine at night, the cup of his lantern fell out, and the light was extinguished; he then descended to the cab and procured another. When returning to the top of the cab he was knocked off and killed: *Held*, that this did not prove negligence by the company in furnishing a defective lantern.

4. Negligence is a relative term; the surroundings are absolutely necessary to be ascertained before the question of negligence can be determined.

5. A brakeman, while returning at night by a ladder on the side of the car to his position on the top of the train, then in motion, was knocked off and killed by an old tank, which was closer to the track than was necessary, or than tanks, at this day, generally are: *Held*, that in this there was no evidence of any negligence by the railroad company.

6. A non-suit in this case was therefore proper.

Before WALLACE, J., Greenville, April, 1883.

This was an action by Richard Davis, as administrator of his son, Richard J. Davis, against the Columbia and Greenville Railroad Company, to recover $20,000 damages for killing Richard J. while in the employment of the defendant. The intestate was killed on the night of May 20, 1881, and the action was commenced January 2, 1883. The opinion states the grounds of the action as alleged in the complaint.

*Richard Davis testified* that he depended on this and two other sons' exertions for his support; that he owned a house in Columbia worth $2,500, and received the income of a plantation, but that others were dependent on him; that deceased received $1 per day; never paid witness anything, but gave deceased's mother money and supplies, amounting to $8 or $10 a month, during which time deceased lived with witness and paid no board; when deceased was out of work witness supported him; while witness lived in Abbeville deceased and his brothers lived in the Columbia house, and he gave nothing to witness or to his mother.

*J. A. Hall testified* that he was engineer and Davis a train hand of freight train; at Piedmont latter got on top of train and

signalled with his lamp for witness to go ahead; noticed that lamp went out; as train passed Grove Station was signalled to stop; did so; went back and found Davis lying across the track dying; was struck on right side, body badly broken; thinks he was struck by projecting timbers of tank at Grove Station; deceased was required by rules of the company to be on top and keep a light at night; thinks tank was too close; it was removed three or four weeks afterwards; heard deceased say on day before that he had $14 to send his mother; was good train hand, sober, energetic, saving; ladder was on side of car next tank.

X.—Had been on road two years, but not now; pump was there when I came; freight train did not use this pump; deceased had never stopped there for water; was running twelve to fifteen miles an hour; heard that deceased was next man for promotion; cannot say how much too near tank was; was closer than any other; so near I had to take my head in from engine while passing; tank was removed soon afterwards.

*John Cox testified* that he and Davis were train hands on this train; Davis was on top and signalled engine; cup dropped out, because lamp was no account; he came down in cab to get another and at once started up ladder on side of car when he was struck by tank and rolled between car and tank; if lamp had been any account, the cup would not have fallen out; cannot tell when tank was removed; a few weeks afterwards; train hands are required to stay on top of cars and to keep a lamp.

X.—Railroad company furnish the lamps; when Davis came down he found another cup in the car; cup fastened in the lamp by springs on side; brakemen attended to lamps; did not hear Davis complain that night about lamp being out of fix; don't know who fixed the lamps that day.

XX.—Conductor makes requisition for lamps; his business to see that train has them; brakemen can't make requisition; when a new cup was put in the lamp I believe it was perfectly good; cup may be pushed in far enough to hold, and yet fly out when the lamp is jerked to be swung around as a signal.

*W. T. Davis testified:* Was section master on this part of the road; the tank at Grove Station was from 12 to 18 inches closer than those now built are placed; in going up side of car, if a

person pulled himself hand over hand up, he might pass ; but if not very careful, he would be knocked off; if a person went up the side of car on ladder, having to raise his feet and bend his body, he could not pass this tank without being struck.

X.—The tanks just after the war were closer than they are now ; canvass pipes were used then, now iron pipes ; at that time brakes were all inside the cars, now they are on top.

. *E. T. Kemp testified:* In May, 1881, lived near railroad track at Grove Station ; was there when Davis was killed ; it was between 8 and 9 o'clock at night ; the train was running very rapidly ; did not stop at tank, but stopped soon after ; trainmen ran back to tank ; stayed half an hour, and went on ; soon heard man was killed ; went there and saw Davis dead ; examined tank and saw where lantern struck it ; saw where projecting timbers on which tub rested had been moved quarter of an inch ; the tank was too near track for a person to climb up ladder between car and track when train was passing it ; the sills on which tank rested projected toward track.

*Dave Henderson testified:* Am a carpenter ; helped build a tank at Grove Station ; after it was built went to Silver Street ; got word from Carpenter, who was our boss, that it must be moved back ; after it was moved Carpenter said it was still two inches too close ; it was built when the road was in the hands of the receiver.

. *J. H. Roberts testified:* Was section master on the section which this tank is on ; heard Carpenter, supervisor of the road, say that the tank at Grove Station was too close to the road, and that it was no account ; that he was going to move it ; Carpenter had charge of tanks and bridges on C. & G. R. R. ; the tank was taken down three or four weeks after the man was killed ; the timbers of the tank were moved three-eighths of an inch where Davis struck it ; the tank was too close to the track eighteen inches ; it was an oversight of the company.

X.—Tank was removed upon completion of a new one a mile or so further east ; new tank is filled from a spring by pipes ; old one was filled from a well by a force pump ; when canvas bags are used tanks have to be nearer than when iron pipes are used.

XX.—Can put plank under canvas pipe and have it as long as an iron pipe.

*T. R. Davis testified:* Am a brother of deceased; father's health has been bad for two or three years; my deceased brother and myself mainly supported the family; have been a conductor for a long time on C. & G. R. R.; it is the duty of conductors to make requisition for equipment of his train, and to see that they are all in good order; seven lamps are required; the tank was too near the track, and has been torn down; my brother has been on the road two months, and running on the freight from Hodges to Greenville two weeks; was next man in line of promotion.

X.—My brother contributed all he could to the support of the family; meals of train hands will cost about ten dollars per month; if train hand needs anything, it is his business to report it to conductor; if train hand were to come and say he wanted a good lamp, of course he could get it; the rent of house in Columbia is worth about $25 per month; my dead brother and myself paid all expenses of the family.

XX.—Duty of conductor to see that all equipments of train in good condition before he leaves terminal points.

The plaintiff closed and defendant moved for a non-suit, which was granted, no grounds being stated in the order.

Plaintiff appealed upon the following grounds:

"It is submitted that the Circuit judge erred in granting a non-suit: 1. Where there is any proof to sustain the allegations of the complaint the question must go to the jury. 2. The question of negligence was a mixed question of law and fact, and should have been submitted to the jury. 3. The question of negligence in this case should have been submitted to the jury, because it was proved that the railroad company had notice that tank was too near track. 4. Four witnesses having sworn that the 'tank was too close to track,' the judge should not have decided that there was no negligence. 5. The tank having been removed very soon after Davis was killed and being newly built, it should have been submitted to the jury whether this was not an admission of negligence on the part of the company. 6. The evidence being that it was the duty of defendant to furnish good lamps, and that of Davis being worthless, the jury should have passed upon negligence in this respect. 7. The proof showing

that tank was too near track, the defendant was liable for accidents to employés occasioned by improper or dangerous structures, if employé was in discharge of his duty.   8. Under the proof the company was liable to administrator for death of intestate.   9. Two witnesses having sworn that the supervisor of the road, charged with the management of the tanks of the road, had said this tank was too close to the track, and was no account, it was error in the presiding judge to say there was no evidence of negligence.   10. Because that his honor erred in holding that the deceased was chargeable with knowledge of the dangerous proximity of the tank, it being in proof that he had only been on that end of the road two weeks, had never stopped at the tank for water, and passed it at night."

*Mr. M. L. Bonham, jr.*, for appellant.

This action is brought under Lord Campbell's act, *Gen. Stat.*, §§ 2183–84. It is a question of negligence, which has been considered in 15 *S. C.*, 453. The inquiry is, what is defendant's duty towards its employés? The servant takes the ordinary risks of his calling, but the master must provide safe and proper appliances and machinery. 1 *Add. Torts*, 603; 18 *S. C.*, 262, 275; *Wood M. & S.*, 749. If the defendant failed so to provide, it is liable. 52 *Ill.*, 183; 55 *Id.*, 492; 90 *N. Y.*, 558; 29 *Mo.*, 495; 46 *Id*, 163; 76 *Pa. St.*, 389. The questions are, did the person injured know of the danger, or might he have known; did the master know, or might he have known? And these are questions for the jury. Therefore the non-suit was improper. In non-suits the inquiry is, what are the material allegations, and is there any evidence to sustain them? 19 *S. C.*, 510. And a non-suit should be granted only where there is a total failure of evidence. 2 *Bay*, 126; 3 *McCord*, 131; 3 *S. C.*, 1; 7 *Id.*, 142; 18 *Id.*, 607; 19 *Id.*, 20, 30: 1 *Strob.*, 203; 17 *Wall.*, 657. The decision in *Carter* v. *Railroad Company*, 19 *S. C.*, 20, must have related solely to the existence or non-existence of facts; it could not have intended to invest judges with the decision of facts, for this the constitution prohibits. The judge therefore erred, for there was unquestionably some evi-

dence of negligence. The judge must have based his decision on supposed knowledge by the deceased of the danger, and that he assumed it as one of the risks of his calling. But, as we have shown, this was for the jury. See, too, 95 *Pa. St.*, 211. The supervisor of the road said it was too close. Deceased could not have known this, for he had no opportunity of learning it. To hold him responsible for knowing it, was to charge him with contributory negligence, which is a matter of defence. 19 *S. C.*, 20. But if he knew, defendant is still liable, if negligent. 31 *Grat.*, 812; 76 *Pa. St.*, 387. There was certainly evidence enough to carry the case to the jury. The plaintiff had a beneficial interest in the life of the deceased. *Cool. Torts*, 272; *Wood Mayne Dam.*, 75, 93. The judge relied solely for his order on *Gibson* v. *Erie R. R. Co.*, 63 *N. Y.*, 449, which is in many particulars unlike the case at bar, and was decided by a divided court.

*Messrs. Wells & Orr*, same side.

*Mr. J. C. Haskell*, contra.

April 14, 1884. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This is an action brought by the plaintiff, appellant, as administrator of his son, Richard J. Davis, deceased, against the respondent, to recover damages for causing from negligence the death of the said Richard, who at the time of his death was in the employment of the respondent in the capacity of road hand on a freight train. At the close of plaintiff's testimony, on motion of the respondent, a non-suit was ordered.

The plaintiff's action is based upon an alleged beneficial interest in the life of the deceased, and negligence on the part of the company, the negligence consisting of an alleged failure on the part of the company to furnish the deceased with a safe lantern while in the discharge of a duty imposed upon him to ride on top of the conductor's cab attached to the train, running in the night time from Columbia to Greenville, and in negligently erecting and permitting a pump or tank to remain closer to the

track than the requirements and necessities of the company demanded, by which negligence, it is alleged, the deceased lost his life.

This sad event happened in this way : While the deceased was on top of the cab in the discharge of his duty, the bottom of the lantern dropped out and the light was extinguished, which made it necessary for the deceased to descend to the cab for another, and on his return to his post, by means of a ladder attached to the outside of the cab, the only means of reaching the top again, just at that moment the train passed the tank, the timbers of which struck the deceased and knocked him from the train, causing his death. The negligence relied on as the foundation for the action was in reference to the lantern and the tank. The non-suit was granted, in part at least, because in the opinion of the Circuit judge the plaintiff failed to introduce testimony as to those matters sufficient to entitle him to go to the jury.

The law as to non-suits in this state, settled and repeated in a number of cases from Bay's Reports down to the present time, is that an entire failure of evidence as to one or all of the material facts upon which the action depends, will alone authorize the granting of such motion. The plaintiff is required to state in his complaint the facts which constitute his cause of action. As a general rule it is not difficult to understand what the facts are, and when properly stated in the complaint and denied in the answer, they make the issue between the parties litigant, which is to be tried by the jury upon the testimony offered ; and under our system, after the case reaches the jury, they are the sole judges whether these facts at issue have been proved. It is their duty to hear the testimony submitted, to weigh it, and to determine its force and effect.

In every case, however, a question may arise whether any pertinent testimony has been offered by the plaintiff to sustain his complaint. This, if it arises, is always a preliminary question, and before the case goes to the jury, and it is a question of law to be decided by the judge. If, in such case, no testimony directed to the facts at issue has been introduced (and this is for the judge to determine), a non-suit is proper. If, however, any testimony has been offered, whether in the estimation of the judge

true or false, the case must be submitted to the jury.  It will be observed, then, that the preliminary question referred to, to be decided by the judge when it arises, in no way impinges upon the constitutional mandate, that the juries are the judges of the facts, and alone shall try them, while the judge shall decide the law.  Because in this preliminary question there is no dispute as to the facts, or as to what has been proved, and therefore nothing for the jury to determine, but the question is, admitting the truth of the testimony as offered, is it pertinent?  Does it touch the allegations in the complaint, the facts at issue?

There are some loose expressions in some of the cases to the effect that insufficient testimony will sustain a non-suit.  These expressions should not be understood, however, as giving power to the trial judges to determine the quantum of testimony sufficient to prove an alleged fact, or to decide as to the truth, force, or effect of such testimony; but they should be interpreted in the sense rather of pertinency or relevancy.  In fine, the rule is, that where there is any competent, pertinent, and relevant testimony offered to the facts in dispute, the case passes into the hands of the jury and beyond the judge; but where no such testimony is offered, it is the province and duty of the judge to non-suit. Thus understood, the rule is clear and it harmonizes the respective functions of the court and the jury, making our judicial system the complete and perfect system that it is; leaving the law to those who have made it a special study, and therefore better able to decide it—the judges—and the facts to those who, from their practical common sense, are perhaps best able to solve them—the jury.

The subject of non-suits has been discussed in this state in the cases here cited, and the rule established is as above stated, which may be succinctly expressed thus : In the absence of all testimony in support of the material allegations in the complaint, which is a question for the judge, a non-suit is proper; but where there is any testimony directed to said allegations, the weight, truth, and sufficiency of which are to be determined, the case must go to the jury.  *Brown* v. *Frost*, 2 *Bay*, 126; *Hopkins* v. *De Graffenreid, Ibid*, 187, 441 ; *Singleton* v. *Hilliard & Brooks*, 1 *Strob.*, 218; *Graff & Co.* v. *Caldwell*, 7 *Rich.*, 133; *O'Neall*

*& Chambers* v. *S. C. R. R. Co.*, 9 *Id.*, 465 ; *Redding* v. *S. C. R. R. Co.* 3 *S. C.*, 9 ; *Ahrens* v. *State Bank*, *Ibid*, 401 ; *Boykin* v. *Watts*, 6 *Id.*, 83 ; *Holley* v. *Walker*, 7 *Id.*, 144 ; *Rowe* v. *G. & C. R. R. Co.*, *Ibid*, 167 ; *Hogg* v. *Pinckney*, 16 *Id.*, 387 ; *McCall* v. *Cohen*, *Ibid* 448 ; *Carrier* v. *Harris*, 19 *Id.*, 30 ; *Carter* v. *G. & C. R. R. Co.*, *Ibid*, 20.

Now apply these principles to the case under consideration. The action is properly brought under the act of 1859 (*Gen. Stat.*, §§ 2183–84), under which the plaintiff is entitled to recover "such damages as the jury may think proportioned to the injury resulting from the death to the parties respectively for whom and for whose benefit it is brought." Admitting that the term injury in this act refers alone to pecuniary loss, and not to the wounded feelings of the survivors, or the sufferings of the deceased, yet we think there was some testimony taken from the father and the brother of the deceased on the subject of a beneficial interest—uncertain, it is true, but enough perhaps for the jury to consider. We will therefore pass on to the most important question, the question of negligence.

Actionable negligence is defined to be the absence of that care which men ordinarily bestow upon their business. The negligence complained of here is an alleged failure on the part of the company to do its duty in two particulars: First, in failing to supply the deceased with a safe and perfect lantern, on account of which his light was extinguished while on top of the car, and he was therefore compelled to descend to the cab for another, and then immediately to ascend again to his signal post, when the accident happened, and but for which it would not have happened ; second, in erecting a tank so near the track as to cause injury and endanger the safety of the employés of the road, and in permitting this tank to remain in this close proximity to the road.

As to the act of negligence first alleged : There is no doubt that employers are required to use all ordinary care in furnishing their employés with safe and perfect utensils with which to discharge their respective duties, and to do their allotted work, and a failure to bestow this care will amount to actionable negligence. In this instance, no doubt, it was the legal duty of the defendant

to bestow reasonable and ordinary care in furnishing the deceased with safe lanterns by which he was expected to signal danger to the train from the top of the cab; but before the company could be made liable, or before even the question of negligence in this respect could be submitted to the jury, it was necessary that some testimony directed to the point of failure to bestow this care should have been introduced. Was there such testimony offered? The testimony is direct that the deceased a short time before the accident happened was at his post on the cab, with his lantern lighted; that he signalled the engine ahead; that the cup of the lantern dropped out; that he came down into the cab and procured another, and then started back up the ladder on the side of the car, when this awful calamity overtook him.

This is all the testimony in reference to the lantern, except that the witness who testified to these facts also stated generally that the cup of the lantern dropped out, because it was "no account." No doubt it was the duty of the deceased when his lamp went out to procure another as speedily as possible, and no doubt he adopted the only course possible at the time to procure another; but it will be seen that the turning point in these different steps was the extinguishment of the light. It was this that necessitated all the rest. Is there any testimony as to the cause of the extinguishment of the lantern connecting the defendant therewith? Take the matter as stated by the witness, to wit, that the cup dropped out, and this was because the lantern was "no account." Does this connect the defendant with the result? Does the whole or any part of the testimony go to the point that the defendant had failed to exercise reasonable and proper care, such as men ordinarily bestow on their business in furnishing the deceased with safe lanterns?

We find not a word in the testimony on that subject, at least none to the precise point necessary to inculpate the defendant, to wit, that the deceased was using a defective lantern, because of the fact that defendant had negligently furnished him with such; on the contrary, it appears that the deceased procured another from the cab, which we suppose was safe and perfect, as there is no testimony to the contrary. He might have taken that one at the first. That he did not was perhaps his own negligence,

rather than that of the company. We think there was an entire absence of all testimony directed to the negligence of the company as to the lantern.

Next, as to the proximity of the tank. The testimony is very clear that the deceased was killed by the timbers of this structure, and it appears therefore that whether the tank was closer to the track than was necessary for the purposes of the road, yet it was close enough to crush a person who happened to be on the outside of the car as it passed. It also appears that the supervisor of the road, Mr. Carpenter, had said that it was too close; one of the witnesses said it was 18 inches too close, and it was established that it was about that much closer than tanks are now located; hence iron pipes had come into use instead of rubber, and hence the brakes have been put on top of the cars instead of inside. It further appeared that notwithstanding the fact of its proximity, yet a person might go up the ladder hand over hand with safety. This was the entire testimony as to the tank. These were all necessary facts, but admitting them all, where is the testimony as to the main link in the chain by which the company is to be connected with the event complained of. Where is the testimony to the point that there was the absence of due care, or such care as is ordinarily bestowed in such cases by the company in building this tank so near the track? The fact that a structure is built so near a railroad track that a man hanging on the outside of a car would be struck in passing (and this is all the testimony), is not in itself any evidence of negligence, at least it would not be evidence in every case.

Negligence is a relative term. What would be negligence under one state of facts might be entirely free from negligence under another. No doubt it is the legal duty of a person engaging in any business dangerous to others to exercise due care in providing against such dangers, and the absence of such care as the case requires would be negligence, but at the same time the character of the danger, whether remote or proximate, probable or possible, would be a material fact in determining the question of negligence, growing out of the care bestowed in guarding against it. In other words, the fact of negligence would, in a given case, greatly depend upon the character of the danger to

be apprehended, whether thus remote or proximate, possible or probable. And it would be impossible to determine the question without evidence upon this essential fact. Much greater care is necessary when a train of cars is crossing a highway than when passing along its track at a point distant from a highway. And much greater care must be observed along a crowded street than in the open country. The surroundings are absolutely necessary to be ascertained before the question of negligence can be determined.

Now in this case the deceased was knocked from the train and killed while he was upon the ladder on the outside of the car when the train was passing this structure, and, it is true, that such an accident could not have happened had the tank not been located as it was. But whether the danger of such an accident happening at that point and in that way was of such a character as to have required the company to locate this tank a few inches back, was a material fact in determining whether due care had been exercised, and consequently a material fact on the question of negligence. In locating this tank, did ordinary or reasonable care or foresight demand that the company should foreknow, or even apprehend, that it was probable, remote or otherwise, that the lantern of a brakeman who was posted on the top of the conductor's cab, and required by the rules of the company to remain there, would go out just as the train was approaching this point, and at the moment that it swept by, that this brakeman, after descending to the cab for a second lantern, would be on the ladder returning to his position?

It seems to us that these facts, or at least some facts showing the character of care that should have been bestowed, and that it was absent, the danger to be apprehended, and that it was not provided against, or something of that kind, were material facts on the question of negligence before that question could be properly submitted to a jury. But we find no testimony in the record directed to these points. The substance of the entire testimony is, that the tank was close enough to the track to strike one who happened to be on the outside of the car when the train was passing that point; that the deceased was on the outside at this precise moment and was killed; but there was no testimony

that in locating this tank so near, the company, in view of such a conjuncture of circumstances, or of any danger resulting therefrom, failed to exercise reasonable care, such care as men ordinarily exercise in the conduct of business. In the absence of such testimony the non-suit was not without authority of law.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCIVER concurred.

MR. JUSTICE MCGOWAN *dissenting.* I cannot concur. It seems to me that the question of proper care on the part of the company should be considered with reference to the event which actually occurred, and not the probabilities in advance, whether the concurrence of circumstances necessary to produce it might or might not take place.